**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*Palm Beach Division*

| | |
|---|---|
| IN RE: | CASE NO. 10-22049-EPK |
| WELLINGTON PRESERVE CORPORATION, | Chapter 11 |
| Debtor. | |

## AMENDED JOINT PLAN OF LIQUIDATION OF DEBTOR AND CLICO ENTERPRISES LTD.

/s/ Ronald G. Neiwirth------------
Ronald G. Neiwirth
Fla. Bar No. 152175
rneiwirth@fowler-white.com
John S. Graham
Fla. Bar No. 52147
jgraham@fowler-white.com

FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*Attorneys for the DIP*

Dated: April 20, 2011

1

**JOINT PLAN OF LIQUIDATION OF DEBTOR AND CLICO ENTERPRISES LTD.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Wellington Preserve Corporation and Clico Enterprises Ltd. propose the following plan of liquidation under section 1121(a) of the Code, contemplating the complete liquidation of the assets of the Debtor (as defined herein below) via orderly sales the proceeds of which shall be distributed to creditors in order of priority as established by 11 U.S.C. §726, as follows:

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

*"Actions"* shall mean all actions that a trustee or debtor-in-possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

*"Administrative Claim"* shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(2) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. §1930.

*"Administrative Claimant"* shall mean the holder of an Administrative Claim.

*"Administrative Claims Bar Date"* shall mean the last day for Creditors to file a request for allowance and payment of Administrative Claims.

*"Affiliate"* shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in section 101(2) of the Code, if such Person was a debtor in a case under the Code.

*"Allowed Amount"* shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in the proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

*"Allowed Claim"* shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

*"Article"* shall mean one of the numbered Articles of the Plan.

*"Assets"* shall mean all of the right, title, and interest of the Debtor in and to Property of the Estate, whether tangible or intangible.

*"Bar Date"* shall mean July 26, 2010, the last date for creditors and holders of Equity Interests to have filed proofs of Claims or Equity Interests in the Case.

*"Business Day"* shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Palm Beach, Florida are authorized or required to close.

*"Case"* shall mean the Chapter 11 Case No. 10-22049-EPK pending before the United States Bankruptcy Court for the Southern District of Florida.

*"Cash"* shall mean legal tender of the United States of America.

*"Claim"* shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

*"Class"* shall mean a group of Claims or Equity Interests classified together pursuant to Article IV of the Plan.

*"Class 1"* shall mean the Secured Claim of Brennan Financial, as described, classified and treated in Section 4.1 of this Plan.

*"Class 2"* shall mean the Secured Mechanics Lien Claims of H & J Contracting Inc., Alan Gerwig & Associates, Inc., Dunkelberger Engineering & Testing Inc., and O'Dell, Inc., as described, classified and treated in Section 4.2 of this Plan.

*"Class 3"* shall mean the Allowed Unsecured Claims (excluding, however, any Unsecured Claims of Clico Enterprises Ltd., the parent company and affiliate of Debtor, and Internal Revenue Service claims for penalties and interest thereon), as described, classified and treated in Section 4.3 of this Plan.

*"Class 4"* shall mean the Allowed Unsecured Claims of Clico Enterprises Ltd., as described, classified and treated in Section 4.4 of this Plan.

*"Class 5"* shall mean the portion of the claims of the Internal Revenue Service consisting of penalties and interest thereon, which are subordinated under 11 U.S.C. §726(a)(4), as described, classified and treated in Section 4.5 of this Plan.

3

"***Class 6***" shall mean the Equity Holders Claims, as described, classified and treated in Section 4.6 of this Plan.

"***Code***" shall mean the Bankruptcy Code, 11 U.S.C. §§101 et. seq.

"***Confirmation***" shall mean the entry by the Court of the Confirmation Order.

"***Confirmation Date***" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"***Confirmation Hearing***" shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

"***Confirmation Order***" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in a form and substance satisfactory to the Proponent.

"***Court***" shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"***Creditor***" shall mean any Person holding a Claim or Equity Interest, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"***Debtor***" or "***Debtor-in-Possession***" shall mean Wellington Preserve Corporation. Any reference to the "Debtor" shall also include the Debtor in its capacity as a debtor-in-possession in this Case, and vice-versa.

"***Disputed Amount***" shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

"***Disputed Claim***" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed pursuant to Section 5.5 of this Plan or otherwise, or such other dates as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

"***Disputed Claims Reserve***" shall have the meaning set forth in Section 5.4(b) of the Plan.

"***Distribution***" shall mean funds to be paid to holders of Claims pursuant to Article II, Article IV, and Article V of the Plan.

"***Distribution Date***" shall mean the dates upon which Distributions may be made pursuant to Article V of the Plan.

"***Docket***" shall mean the docket maintained in this Case by the Clerk of the Court.

*"Effective Date"* shall mean the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 8.2 of the Plan occurs.

*"Equity Interest"* shall mean any ownership or equity interest in the Debtor, including without limitation, equity interests or other rights to purchase any ownership or equity interest in the Debtor.

*"Estate"* shall mean the Estate created in this Case pursuant to section 541 of the Code.

*"Face Amount"* shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

*"Fee Request"* shall mean an application or request for payment by the Estate of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

*"Filing Date"* shall mean April 27, 2010, the date on which the Debtor commenced this Case by filing a voluntary petition under Chapter 11 of the Code.

*"Final Order"* shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

*"Impaired"* shall mean an Allowed Claim or Equity Interest that is Impaired within the meaning of section 1124 of the Code.

*"Insider(s)"* shall mean those Persons defined in section 101(31)(B) of the Code.

*"Lien"* shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

*"Liquidating Trust Assets"* shall mean any Assets excluded under the Unsecured Creditor Carve Out.

***"Liquidating Trustee"*** shall mean the individual selected to serve in accordance with Article X of this Plan from and after the Effective Date.

***"Other Priority Claims"*** shall mean a Claim (other than an Administrative Claim or Priority Tax Claim) that is entitled to priority under section 507 of the Code.

***"Person"*** shall mean any individual, sole proprietorship, Equity (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

***"Petition Date"*** shall mean the Filing Date.

***"Plan"*** shall mean this Plan of Liquidation in the present form or as it may be modified, amended, or supplemented from time to time.

***"Plan Administrator"*** shall mean the individual selected to serve in accordance with Article XI of this Plan from and after the Effective Date.

***"Post-Confirmation Administrative Claim"*** shall mean a Claim for services rendered or expenses incurred after the Confirmation Date in connection with this Case.

***"Post-Petition Interest"*** shall mean all interest accrued but unpaid after the Petition Date that is awarded by the Court on account of any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

***"Pre-Petition"*** shall mean prior to the Filing Date.

***"Priority Claims"*** shall mean a Claim (other than an Administrative Claim or Priority Tax Claim) that is entitled to priority under section 507(a) of the Code.

***"Priority Tax Claim"*** shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

***"Pro Rata"*** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that Class, unless otherwise defined in the Plan. Whenever a Disputed Claim has not been finally resolved, an appropriate reserve for payment of such Disputed Claim shall be established so that there will be sufficient consideration available to make a Pro Rata Distribution to the holder of such Disputed Claim upon final resolution of the dispute.

***"Professional"*** shall mean any professional employed in this Case pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

6

"***Property of the Estate***" shall mean the property defined in section 541 of the Code.

"***Proponent***" shall mean the Debtor, and its parent company as well sole shareholder and largest creditor, Clico Enterprises Ltd., a company organized under the laws of the Commonwealth of the Bahamas, which is in "winding up" or liquidation, in the Supreme Court of the Commonwealth of the Bahamas..

"***Rules***" shall mean the Federal Rules of Bankruptcy Procedure.

"***Schedules***" shall mean the Schedules of assets and liabilities originally filed by the Debtor with the Court and as the same may be amended from time to time by the Debtor.

"***Section***" shall mean a numbered subsection of any Article of the Plan.

"***Secured Claim***" shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

"***Secured Creditor***" shall mean the holder of a Secured Claim.

"***Secured Tax Claims***" shall mean ad valorem taxes assessed against the real property owned by the Debtor in the ordinary course of it's business.

"***Substantial Consummation***" shall mean that the Plan shall be deemed to be substantially consummated in accordance with sections 1101 and 1127(b) of the Code.

"***Unimpaired***" shall mean an Allowed Claim or Allowed Equity Interest that is not Impaired within the meaning of section 1124 of the Code.

"***Unsecured Claim***" shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

"***Unsecured Creditor***" shall mean the holder of an Unsecured Claim.

"***Rules of Construction and Interpretation***"

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

a)  The terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to."

b)  Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

### ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

2.1.    **Allowed Administrative Claims**.

Administrative Claims are Claims constituting a cost or expense of the administration of the Case allowed under sections 503(b) and 507(a)(2) of the Code. Such Claims include any actual and necessary costs and expenses of preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor in Possession, any indebtedness or obligations incurred or assumed by the Debtor in Possession in connection with the conduct of its business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent Allowed by the Court under section 330, 331 or 503 of the Code, all costs associated with the cure of any executory contracts and unexpired leases between the Debtor and any Person, and any fees or charges assessed against the Estate of the Debtor under section 1930 of title 28 of the United States Code.

Except as otherwise provided herein, and except to the extent that any entity entitled to payment of any Allowed Administrative Claim agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim by Final Order, or as soon thereafter as is reasonably practicable.

(a)    **Ordinary Course Claims**

Allowed Administrative Claims representing liabilities incurred by the Debtor in Possession in the ordinary course of its business shall be paid in full in Cash on the later of the Effective Date of the Plan or the date on which such Claim becomes an Allowed Administrative Claim by Final Order of the Court.

(b)    **Professional Fee and Expense Claims**

Compensation of Professionals and reimbursement of expenses incurred by Professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "Professional Fee and Expense Claims"). All payments to Professionals for Professional Fee and Expense Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services

8

rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fee and Expense Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 of the Code and Rule 2016 by the date fixed by the Court.

The time for filing objections to applications for allowance and payment of Professional Fee and Expense Claims, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set by order of the Court.

### 2.2.    **Secured Tax Claims**

Except to the extent that a holder of an Allowed Secured Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall be paid in full in Cash on the later of the Effective Date of the Plan or the date on which such Claim becomes an Allowed Secured Tax Claim by Final Order of the Court, or as soon thereafter as it is reasonably practicable.  For the avoidance of doubt, *ad valorem* real estate tax claims are first priority lien upon the real property of the Debtor.  A Tax Certificate has been sold, but the vast majority of the secured tax obligations are held by Palm Beach County, Florida. Interest will be paid on Allowed Secured Tax Claims for the years 2008 and 2009 at the rate of 18% per annum, while interest will be paid on the same for the year 2010 at the rate of 18% per annum. All Allowed Secured Tax Claims will be paid to the Tax Collector of Palm Beach County in order to facilitate the process of accounting for the payments and issuance of satisfactions of Tax Certificates.

### 2.3.    **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in full in Cash on the later of the Effective Date of the Plan or the date on which such Claim becomes an Allowed Priority Tax Claim by Final Order of the Court, or as soon thereafter as is reasonably practicable.

### 2.4.    **United States Trustee's Fees**

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Liquidating Trustee shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, upon the entry of an order of this Court dismissing this Case, or upon entry of an order converting this Case to another chapter under the Code, and the Liquidating Trustee shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Attached hereto and incorporated as Exhibit "1" is a list of all known Creditors of the Debtor, other than Administrative Expenses. For purposes of this Plan, Claims against, and Equity Interests in, the Debtor shall be classified as follows:

| Class | Description | Status | Voting Status |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of Brennan Financial | Unimpaired | No. Deemed to Accept |
| Class 2 | Allowed Mechanics Lien Claims | Unimpaired | No. Deemed to Accept |
| Class 3 | Allowed Unsecured Claims (excluding, however, any Unsecured Claims of Clico Enterprises Ltd., and Internal Revenue Service claims for penalties and interest thereon) | Unimpaired | No. Deemed to Accept |
| Class 4 | Allowed Unsecured Claims of Clico Enterprises Ltd. | Impaired | No. Proponent of Plan jointly with Debtor. |
| Class 5 | Allowed Unsecured Claims of Internal Revenue Service Subordinated for Distribution Pursuant to 11 U.S.C. §726(a)(4) | Unimpaired | No. Deemed to Accept |
| Class 6 | Equity Holders | Impaired | No. Proponent of Plan jointly with Debtor. |

# ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

4.1.    **Class 1. Allowed Secured Claim of Brennan Financial**

(a)    **Description**.  Class 1 consists of the Allowed Secured Claim held by Brennan Financial.

(b)    **Treatment**.  Brennan Financial shall receive $1,445,490.58, in full satisfaction, release and exchange for such Claim, Cash in an amount equal to the amount of such

10

Allowed Secured Claim on the later of the Effective Date or the date the proceeds of the sale of the Assets are cleared, or as soon thereafter as is reasonably practicable.

    (c)  **Impairment**.  The Class 1 Claim is Unimpaired.

  4.2.  **Class 2. Allowed Mechanics Lien Claims**

    (a)  **Description**.  Class 2 consists of the Allowed Mechanics Lien Claims as follows:

      (i)  Alan Gerwig & Associates, Inc.in the amount of $3,532.50;

      (ii)  Dunkelberger Engineering & Testing Inc. in the amount of $801.00;

      (iii)  H & J Contracting Inc. in the amount of $23,059.39; and,

      (iv)  O'Dell, Inc. in the amount of $47,522.40.

    (b)  **Treatment**.    They shall receive, in full satisfaction, release and exchange for such Claims, Cash in an amount equal to the amount of such Allowed Mechanics Lien Claims on the later of the Effective Date or the date the proceeds of the sale of the Assets are cleared, or as soon thereafter as is reasonably practicable.  For the avoidance of doubt, Class 2 Claims are secured and will accordingly be paid together with interest from the date upon which the respective Mechanic's Liens were recorded, at the legal rate of 6% per annum.

    (c)  **Impairment**. The Class 2 Claim is not Impaired.

  4.3.  **Class 3. Allowed Unsecured Claims**

    (a)  **Description**.  Class 3 consists of Allowed Unsecured Claims excluding, however, any Unsecured Claims of Clico Enterprises Ltd. and the Internal Revenue Service penalties and interest thereon. The total amount of undisputed Allowed Unsecured Claims in this Class 3 is $844,919.68.

    (b)  **Treatment**.    On the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, each holder of an Allowed Class 3 Claim shall receive, in full satisfaction, release and exchange for such Claim, Cash in an amount equal to the allowed amount of such claim.

    (c)  **Impairment**. The Allowed Class 3 Claims are not Impaired.

  4.4.  **Class 4. Allowed Unsecured Claim of Clico Enterprises Ltd.**

    (a)  **Description**. Class 4 consists of the Allowed Unsecured Claim of Clico Enterprises Ltd. pursuant to the Debtor's sworn schedules in the amount of $73,000,000.00. Clico Enterprises Ltd., a proponent of the Plan, voluntarily subordinates its claim to the creditors in Class 3.

    (b)  **Treatment**. On the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, the Class 4 claimant shall receive any remaining balances after the

11

satisfaction of all: (i) Allowed Administrative Claims, (ii) Priority Tax Claims, (iii) U.S. Trustee's Fees, (iv) creditors under Classes 1 through 3 above, and (v) any Disputed Claims Reserve, up to $73 million without interest.

(c)    **Impairment**.  The Class 4 Claim is impaired, but does not vote, as it is both an insider and a proponent of the Plan.

4.5.    **Class 5. Disputed Unsecured Claims of the Internal Revenue Service for Penalties and Interest Thereon Subordinated for Distribution Pursuant to 11 U.S.C. §726(a)(4)**

(a)    **Description**. Class 5 consists of Disputed Unsecured Claims of the Internal Revenue Service for penalties and interest thereon subordinated for distribution pursuant to 11 U.S.C. §726(a)(4).

(b)    **Treatment**. On the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, the Class 5 claimant shall receive such portion of the proceeds of the sale of Debtor's Assets after the satisfaction of all: (i) Allowed Administrative Claims, (ii) Allowed Secured Tax Claims, (iii) Allowed Priority Tax Claims; (iv) U.S. Trustee's Fees, (v) creditors in Classes 1 through 4 above, and (vi) any Disputed Claims Reserve, up to payment in full.

(c)    **Impairment**. The Class 5 segment of the claim of the Internal Revenue Service is impaired.

4.6.    **Class 6. Equity Security Holders**

(a)    **Description**. Class 6 consists of Clico Enterprises Ltd. which owns 100% of the capital stock of the Debtor.

(b)    **Treatment**. Due to the fact that Debtor is insolvent the stockholder will receive nothing and the corporation will be dissolved.

(c)    **Impairment**. The Class 6 Claim is impaired.  Since the Class 6 Equity Security Holder, Clico Enterprises, Ltd. is both an insider and a proponent of the Plan, it is not entitled to vote.

## ARTICLE V

### PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS

5.1.    **Voting of Claims and Equity Interests**

Each holder of an Allowed Claim or Equity Interest in an Impaired Class of Claims or Equity Interests that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing

certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

**5.2.    Nonconsensual Confirmation ("Cramdown")**

Notwithstanding that any Impaired Class of Claims or Equity Interests entitled to vote does not accept the Plan by the statutory majorities required by section 1126(c) of the Code, the Debtor is requesting confirmation of the Plan under the cram down provisions of section 1129(b) of the Code.

**5.3.    Method of Distribution Under the Plan**

(a)    Subject to Rule 9010, and except as otherwise provided in this Section 5.3 of the Plan, all Distributions under the Plan shall be made by Debtor or the Liquidating Trustee, as applicable, to the holder of each Allowed Claim at the address of such holder as listed on the Schedules unless the Debtor or the Liquidating Trustee have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    No payment of Cash less than one hundred dollars ($100.00) shall be made to any holder of a Claim unless a request therefor is made in writing to Debtor or the Liquidating Trustee, as the case may be, or unless the Distribution is a final Distribution.

(e)    When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual Distribution shall be rounded as follows: (i) fractions of 1/2 or greater shall be rounded to the next higher whole number, and (ii) fractions of less than 1/2 shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in this Section 5.03(e) of the Plan.

(f)    Any Distributions of Cash or other property under the Plan which are unclaimed for a period of six (6) months after the Distribution Date shall be deposited in the registry of the Court.

(g)    At the close of business on the Effective Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Disbursing Agent (as defined below) shall have no obligation to recognize any transfer of any Claims occurring after the Effective Date; provided, however, that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Effective Date and prior to the Effective Date.  The Distribution Agent shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Effective Date.

13

5.4.    **Distributions Withheld for Disputed Claims**

(a)    **Disputed Claim**

At the present time, the only disputed claim is Claim #1-3 of the Internal Revenue Service in the gross amount of $1,526,102.30.

(b)    **Establishment and Maintenance of Reserve**

On any Distribution Date, the Liquidating Trustee shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to one hundred ten percent (110%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts (the "Disputed Claims Reserve").

(c)    **Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all other accretions or distributions thereon) be held in trust by the Liquidating Trustee for the benefit of the potential recipients of such Cash and shall not constitute property of the Debtor or Clico Enterprises Ltd.

(d)    **Distributions Upon Allowance of Disputed Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive Distributions of Cash and any other consideration from the Disputed Claims Reserve from the Liquidating Trustee within ten (10) days following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

(e)    **No Surplus Distributions to Holders of Allowed General Unsecured Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Liquidating Trustee.

(f)    **Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Liquidating Trustee or the Disbursing Agent on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Liquidating Trustee.

5.5.    **Procedures for Allowance or Disallowance of Disputed Claims**

(a)    **Objections to and Resolution of Administrative Claims and Claims**

14

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtor or the Liquidating Trustee, as the case may be, shall have the exclusive right to make and file objections to Administrative Claims and Claims subsequent to the Effective Date. All objections shall be litigated to Final Order. The Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court, except as otherwise provided herein. Unless otherwise ordered by the Court, the Debtor or the Liquidating Trustee, as the case may be, shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court. The Debtor or the Liquidating Trustee reserve the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Liquidating Trustee shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

(b)      **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such unless and until such Disputed Claim becomes an Allowed Claim (in whole or in part).

(c)      **Disallowed Claims**

All Claims or Equity Interests held by Persons against whom the Debtor or the Liquidating Trustee has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims or Equity Interests pursuant to section 502(d) of the Code and holders of such Claims or Equity Interests shall not be entitled to vote to accept or reject the Plan. Claims or Equity Interests that are deemed disallowed pursuant to this Section 5.5(c) of the Plan shall continue to be disallowed for all purposes until the Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

5.6.    **Disbursing Agent**

The Liquidating Trustee shall act as Disbursing Agent under the Plan with respect to all Distributions on account of Allowed Claims. The Disbursing Agent will serve without bond. The Liquidating Trustee shall hold all reserves and accounts pursuant to the Plan, the Disputed Claims Reserve.

5.7.    **Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

5.8.    **No Recourse**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor, or the Liquidating Trustee, or any of their respective Professionals, consultants, partners or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code.

### 5.9.    **Amendments to Claims**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Liquidating Trustee or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 5.10.    **Post-Petition Interest on Claims**

Unless expressly provided in the Plan, the Confirmation Order, by order of the Court, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan, Post-Petition Interest shall not accrue on or after the Petition Date on account of any Claim. Those Claims which are entitled to the payment of interest shall be Allowed Secured Tax Claims; Allowed Priority Tax Claims; and Allowed Secured Claims (Mechanic's Liens). By agreement, Brennan Financial's Allowed Secured Claim is for a fixed amount. Neither General Unsecured Claims nor the subordinated General Unsecured Claim of Clico Enterprises, Ltd., shall be entitled to recover interest.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1.    **Assumption or Rejection of Executory Contracts and Unexpired Leases**

#### (a)    **Executory Contracts and Unexpired Leases**

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected as of the Effective Date.

(b)    **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

### 7.1.    General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor, and/or Liquidating Trustee, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan:

(a)    **Sale of Assets**

The filing of the Plan shall represent a request by the Debtor for authority to sell all of its right, title and interest in and to the Assets, generally consisting of 523.581 as further described in the Wellington Site Plan attached as Exhibit "2", as follows: (i) 102.74 acres to Zacara Farm, LLC, a Delaware limited liability company; (ii) an exchange of Debtor's parcels 23B and 24B for the Tanen (as defined below) parcels 24C and 25C; and (iii) 420.841 acres to Michael B. Collins or his assigns, or in the event an agreement is not reached with Michael B. Collins or his assigns then to convey said 420.841 acres to J-5 Wellington Preserve LLC, or its assigns.  A copy of the Agreement executed with J-5 Wellington Preserve LLC (subject to approval of this Court and the Supreme Court of the Commonwealth of the Bahamas) is attached to this Amendment as Exhibit "5." According to the Agreement, which was executed as of April 20, 2011, J-5 Wellington Preserve LLC's "due diligence," during which it may withdraw from the Contract without penalty, expires on May 20, 2011, but it may be extended for a further fifteen (15) days.  If J-5 Wellington Preserve LLC does not close, then the remaining 420.841 acres shall be conveyed to a Liquidating Trust as further defined below.  All assets to be transferred under these agreements free and clear of claims, liens, interests and encumbrances, except as otherwise provided in the Plan.

(b)    **Purchase and Sale Agreement with Zacara Farms, LLC**

The Sale and transfer of 102.74 acres of the Debtor's Assets, as provided for under Section 7.1(a) above, shall be assigned, sold, transferred and otherwise conveyed to Zacara Farms, LLC pursuant to the purchase and sale agreement attached as Exhibit "3" (the "Zacara Purchase"). The entry of the Confirmation Order shall represent the Court's ratification, adoption, and approval of the terms and conditions of the Zacara Purchase subject, however, to the occurrence of the Effective Date.

17

(c)    ***Real Property Exchange Agreement***

Simultaneous with the Zacara Purchase, the Debtor shall assign, transfer and otherwise convey to Joel Tanen, Helene Tanen and Harry Tanen (collectively referred to as "Tanen") lots 24C and 25C in exchange for the Tanen's assignment, transfer and otherwise conveyance of lots 23B and 24B as further described in the Real Property Exchange Agreement attached as Exhibit "4" (the "Tanen Exchange").  The purpose of the Tanen Exchange is to allow the Debtor to sell one contiguous parcel to Zacara Farm, LLC. The entry of the Confirmation Order shall represent the Court's ratification, adoption, and approval of the terms and conditions of the Tanen Exchange subject, however, to the occurrence of the Effective Date.

(d)    **Purchase and Sale Agreement with J-5 Wellington Preserve, LLC and/or Assigns**

On April 20, 2011, the Debtor executed an Agreement for the sale and transfer of its remaining real estate – i.e., 420.841 acres of land in the Village of Wellington, Florida, to J-5 Wellington Preserve LLC.  An Order confirming this Plan shall serve as an Order authorizing the Debtor-In-Possession to enter into the Contract (a copy of which is attached as Exhibit "5") with J-5 Wellington Preserve LLC, for the purchase and sale of such property.  If J-5 Wellington Preserve LLC does not close in a timely fashion, then the DIP will transfer the property into the Liquidating Trust.

(e)    **Distributions**

The initial distributions required under the Plan shall be funded from Cash received from the proceeds from the sale of Assets on the Effective Date in accordance with the Plan. Distributions to holders of Allowed Unsecured Claims shall be made in order of Classes from Proceeds from the Sale. Professional Fees and Expense Claims shall be paid in full in Cash on the Effective Date of the Plan.

(f)    **Liquidating Trustee**

On the Effective Date, Craig A. (Tony) Gomez shall be appointed Liquidating Trustee. He shall be responsible for implementing the Plan.

7.2.    **Articles of Dissolution**

On the Effective Date of the Plan, or as soon thereafter as deemed appropriate by the Plan Administrator, the Plan Administrator shall file articles of dissolution with the Florida Secretary of State on the behalf of the Debtor.

7.3.    **Effectiveness of Instruments and Agreements**

On the Effective Date, all documents described in and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

18

7.4. **Distributions**

Distributions shall be funded from Cash on hand and made by the Liquidating Trustee in accordance with the Plan.

7.5. **Corporate Action**

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the members of the Debtor or their successors in interest under the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the applicable general equity law, without any requirement of further action by the members of the Debtor.

7.6. **No Change of Control**

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

7.7. **Operation of the Debtor in Possession Between the Confirmation Date and the Effective Date**

The Debtor shall continue to operate as Debtor in Possession in the ordinary course, consistent with past practice, subject to the supervision of the Court and pursuant to the Code and the Rules during the period from the Confirmation Date through and until the Effective Date, and any obligation incurred by the Debtor during that period shall constitute a Post-Confirmation Administrative Claim.

7.8. **Administration After the Effective Date**

Except as otherwise provided in this Plan, the Liquidating Trustee shall take required actions consistent, and in accordance with the Plan.

7.9. **Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in this Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

7.10. **Causes of Action**

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtor and Debtor in Possession shall become assets of the Liquidating Trust, and the Liquidating Trustee shall have the authority to commence and prosecute such Actions for the benefit of the Estate.

7.11.  **Objections to Claims**

The Debtor or the Liquidating Trustee, as the case may be, shall pursue any objections to Claims.

7.12.  **Settlements**

After the Effective Date, the Liquidating Trustee shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court. Any settlement or compromise of any Action or objection to Claim shall be subject to final approval of the Bankruptcy Court and the standards applicable under Rule 9019.

7.13.  **Injunction Against Interference with the Plan**

Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

Notwithstanding anything herein to the contrary, nothing herein is intended to waive or impair any claims or rights that any Creditor may have against any third party, or any claims or defenses that any third party may hold or possess in response to or against any such claims, on account of or in connection with, any (a) personal guaranty of any Claim against the Debtor, and (b) any claim against any third party who is a co-debtor on a Claim against the Debtor. Any and all such claims and defenses are expressly preserved.

## ARTICLE VIII

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

8.1.  **Conditions Precedent to Confirmation**

The Plan shall not be confirmed by the Court unless and until the Clerk of the Court shall have entered the Confirmation Order on the Docket.

8.2.  **Conditions Precedent to Effectiveness**

The Plan shall not become effective unless and until the following conditions have been satisfied or waived pursuant to Section 8.4 of the Plan:

(a)  The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(b)  The statutory fees owing to the United States Trustee through the Effective Date shall have been paid in full;

(c)      All other actions, authorizations, filings, consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof; and,

(d)      All other contingencies in the Zacara Purchase shall have been satisfied or waived.

### 8.3.    **Effect of Failure of Conditions**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtor, or (2) prejudice in any manner the rights of the Debtor, any Creditor or party in interest.

### 8.4.    **Waiver of Conditions**

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 8.2 of the Plan. The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

### ARTICLE IX

### RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)      to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)      to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)      to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor, Liquidating Trustee, or any other party in interest with standing to do so,

pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)     to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)     to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)     to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)     to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, any discharge, injunction, exculpation and releases provided for in the Plan;

(n)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p)     to hear any other matter not inconsistent with the Code;

(q)      to hear any request for removal or termination of either the Liquidating Trustee or Plan Administrator, including the appointing of any successor Liquidating Trustee or Plan Administrator; and

(r)      to enter a final decree closing the Case; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Debtor under applicable environmental laws.

# ARTICLE X

## THE LIQUIDATING TRUST

### 10.1.    **Establishment of Liquidating Trust**

Upon the Effective Date of the Plan, the Liquidating Trustee and the Debtor shall enter into the Liquidating Trust Agreement if a definitive agreement has not been entered into with Michael B. Collins and/or assigns for the sale of the remaining 420.841 acres in the village of Wellington, the form of which shall be filed with the Court at least 10 days prior to the Confirmation Hearing. The Liquidating Trust shall be a distinct legal entity from the Debtor, and the Debtor shall have no liability whatsoever from any obligations of the Liquidating Trust pursuant to the Plan, the Liquidating Trust Agreement or otherwise, and is intended to qualify as a Qualified Settlement Fund pursuant to Internal Revenue Code section 468B. By virtue of its execution of the Liquidating Trust Agreement, the Debtor shall transfer, assign, and deliver all of its right, title and interest in and to the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trust Assets shall consist of the following: (a) Actions, if any, (b) the remaining 420.841 acres (if applicable), (c) cash proceeds from the Sale, and (d) Disputed Claims Reserve (collectively, the "Liquidating Trust Assets"). The Debtor shall execute and deliver such other documentation deemed reasonably necessary by the Liquidating Trustee or its counsel to assure the proper transfer, assignment and delivery of title to the Liquidating Trust Assets to the Liquidating Trust. Except as otherwise provided in this section 10.1 of the Plan, the Debtor shall not have any obligation to contribute any funds or assets to the Liquidating Trust

### 10.2.    **Irrevocable Trust**

The Liquidating Trust Assets shall be held in an irrevocable trust for Distribution to the holders of Allowed Unsecured Claims. Once the Liquidating Trust Assets are deposited into the Liquidating Trust, they shall no longer be Property of the Estate or any other Person or Entity, and neither the Debtor nor any other Person or Entity shall have any claim to such funds or Assets. The Confirmation Order shall declare and provide that Liquidating Trust Assets in the Liquidating Trust shall (a) be held in trust as set forth herein, (b) not be Property of the Estate in this or any subsequent proceeding in which the Debtor or its successors or assigns may be a debtor under the Code, and (c) be protected from, and not be subject to, the Claims of any Creditors of, or holders of Equity Interests in, the Debtor.

### 10.3.    **Channeling Injunction**

On the Effective Date of the Plan, all Unsecured Claims shall be automatically channeled, transferred and attached solely and exclusively to the Liquidating Trust, and the sole and exclusive right and remedy available to Unsecured Creditors shall be the entitlement, in accordance with the

Plan and the Liquidating Trust Agreement, to (a) assert Unsecured Claims solely and exclusively against the Liquidating Trust and the Liquidating Trust Assets, and (b) receive shares or beneficial interests in the Liquidating Trust. The transfer to, vesting in and assumption by the Liquidating Trust of the Liquidating Trust Assets and the issuance of the beneficial interests in the Liquidating Trust, as contemplated under the Plan and the Liquidating Trust Agreement, shall, as of the Effective Date, discharge, release, and extinguish all obligations and liabilities of the Debtor for and in respect of all Unsecured Claims. The Liquidating Trust shall assume sole responsibility and liability for all Unsecured Claims and such Unsecured Claims shall be paid from the Net Proceeds of the Liquidating Trust Assets as described under the Plan. The Confirmation Order shall contain appropriate language incorporating the foregoing and permanently enjoining any holder of an Unsecured Claim from taking any action in violation of this Section 10.3 of the Plan. The entry of the Confirmation Order shall act as a full and complete discharge of all Claims, liabilities and/or interests arising from, relating to, or in connection with the Unsecured Claims, except to the extent that the Liquidating Trust Agreement and the Plan provides a mechanism for the payment or resolution thereof.

### 10.4.    Cash Distributions from Liquidating Trust

Pursuant to the Liquidating Trust Agreement, each holder of an Allowed Administrative Claim, Priority Claim, or Allowed Classes 1 through 3 Claim shall receive payment in cash for the allowed amount of its claim. Class 4 and 5 claimants shall be entitled to the payment of their claims from any remaining Assets of the Liquidating Trust until the Assets have been completely disbursed.

### 10.5.    Duties and Responsibilities of the Liquidating Trustee

The duties of the Liquidating Trustee shall be limited to:

      (a)    maintaining a current listing of all Allowed and Disputed Claims;

      (b)    investigate, pursue, prosecute, compromise and otherwise resolve any Actions;

      (c)    investigate, pursue, prosecute, compromise and otherwise resolve any objections to Claims;

      (d)    provide annual financial information and other periodic reports to the holders of Allowed Class 4 Claims in accordance with the Liquidating Trust Agreement;

      (e)    perform such other duties as may be set forth in the Liquidating Trust Agreement or elsewhere in the Plan;

      (f)    acting as Disbursing Agent under the Plan with respect to Distributions under the Plan; and

      (g)    taking any other action reasonably necessary to protect the interests of holders of Allowed Unsecured Claims under the Plan.

The Liquidating Trust Agreement shall provide for the Liquidating Trustee to perform the duties commonly performed by, and have the powers commonly provided to, such trustees, as more specifically set forth in the Liquidating Trust Agreement, including, among other things, obtaining a tax identification number for the Liquidating Trust, preparing and filing appropriate federal and state tax returns for the Liquidating Trust, opening bank accounts for the Liquidating Trust, maintaining records pertaining to the units of beneficial interest of the holders of Allowed General Unsecured Claims in the Liquidating Trust, and retaining professionals to represent the interests of the Liquidating Trust. For purposes of performing all of the foregoing, as well as for the purpose of prosecuting to conclusions objections to Claims and Actions, the Liquidating Trustee shall have the status of a representative of the Estate under section 1123(b)(3)(B) of the Code. Pending entry of a final decree and order closing the Case, the Liquidating Trustee shall submit any settlements of objections to Claims and Actions, including, without limitation, to the Court upon notice as directed by the Court;

### 10.6.    Expenses of the Liquidating Trust

All costs and expenses of the Liquidating Trust associated with the administration of the Liquidating Trust shall be the sole responsibility of and paid by the Liquidating Trust. Under no circumstances shall any such expenses be an obligation of the Debtor, including its successors and assigns.

### 10.7.    Compensation of the Liquidating Trustee and Other Professionals

The Liquidating Trustee shall be paid at the rate of $350.00 per hour. All Professionals (including the Liquidating Trustee and his Professionals) shall be obligated to file applications for allowance of compensation and reimbursement of expenses in accordance with section 330 of the Code, Rule 2016 of the Rules and the United States Trustee's Guidelines and Local Rules of the Court.

### 10.8.    Federal Income Tax Treatment

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.

### 10.9.    Service and Termination of Liquidating Trustee

The Liquidating Trustee shall serve in such capacity until the earliest of (i) entry of a final decree and order closing the Case, (ii) the Liquidating Trustee resigns, and (iii) termination or removal of the Liquidating Trustee. The Liquidating Trustee may be terminated or removed, for cause, by order of the Court following notice and hearing at the request of the United States Trustee. The United States Trustee shall have standing to seek termination or removal of the Liquidating Trustee. Notwithstanding anything herein to the contrary, the United States Trustee shall not be responsible for overseeing the Liquidating Trustee.

### 10.10.   Successor Liquidating Trustee

In the event the Liquidating Trustee resigns or is terminated or removed, a successor Liquidating Trustee shall be appointed by the Court. The names of candidates of potential Liquidating Trustees shall be provided by the United States Trustee.

### 10.11.  Termination of Liquidating Trust

The Liquidating Trust shall terminate upon final payment of a dividend.

### ARTICLE XI

### MISCELLANEOUS PROVISIONS

### 11.1.  Effectuating Documents and Further Transactions

The Debtor or Liquidating Trustee, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or other interests issued pursuant to the Plan.

### 11.2.  Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Code, the issuance, transfer or exchange of notes or other interests under the Plan, including creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 11.3.  Authorization to Request Prompt Tax Determinations

The Debtor or Liquidating Trustee, as the case may be, is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 11.4.  Exculpation

Subject to the occurrence of the Effective Date, the Debtor nor any of its respective partners, members, officers, directors, agents, attorneys, employees, holders of Equity Interests, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice

of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.

Notwithstanding anything herein to the contrary, nothing herein is intended to waive or impair any claims or rights that any Creditor may have against any third party, or any claims or defenses that any third party may hold or possess in response to or against any such claims, on account of or in connection with, any (a) personal guaranty of any Claim against the Debtor, and (b) any claim against any third party who is a co-debtor on a Claim against the Debtor. Any and all such claims and defenses are expressly preserved.

### 11.5.    Injunction Relating to Exculpation

The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution against the Debtor, Liquidating Trustee, and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.

Notwithstanding anything herein to the contrary, nothing herein is intended to waive or impair any claims or rights that any Creditor may have against any third party, or any claims or defenses that any third party may hold or possess in response to or against any such claims, on account of or in connection with, any (a) personal guaranty of any Claim against the Debtor, and (b) any claim against any third party who is a co-debtor on a Claim against the Debtor. Any and all such claims and defenses are expressly preserved.

### 11.6.    Payment of Statutory Fees

The Debtor or Liquidating Trustee, as the case may be, shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6). After confirmation, the Liquidating Trustee shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

### 11.7.    Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or

modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

### 11.8.   Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.9.   Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

### 11.10.  Binding Effect Notices

The Plan shall be binding upon and inure to the benefit of the Debtor, NEWCO, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, Liquidating Trustee, and Plan Administrator.

### 11.11.  Notices

All notices, requests and demands to or upon the Debtor or the Liquidating Trustee to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the **Debtor**:

Wellington Preserve Corporation
c/o Craig A. (Tony) Gomez, President
28 Cumberland Street, POB N-1991
Nassau, Bahamas

With copies to:

Craig A. (Tony) Gomez
28 Cumberland Street, POB N-1991
Nassau, Bahamas

and

Ronald G. Neiwirth, Esq.
Fowler White Burnett, P.A.
1395 Brickell Ave., 14th Floor
Miami, FL 33131

If to the **Liquidating Trustee**:

Craig A. (Tony) Gomez
28 Cumberland Street, POB N-1991
Nassau, Bahamas

With a copy to:

Ronald G. Neiwirth, Esq.
Fowler White Burnett, P.A.
1395 Brickell Ave., 14th Floor
Miami, FL 33131

## 11.12. **Governing Law**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the tights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

## 11.13. **Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Debtor or the Liquidating Trustee, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

11.14.  **Section 1125(e) of the Code**

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Debtor and its respective partners, members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer under the Plan.

11.15.  **Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.16.  **No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

11.17.  **Waiver of Bankruptcy Rule 3020(e) and 7062**

The Debtor may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order, and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

11.18.  **Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

11.19.  **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be Substantially Consummated under sections 1101 and 1127(b) of the Code.

11.20.  **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under section 1112(b)(7) of the Code after entry of the Confirmation Order if there is a default in performing the conditions to effectiveness of the Plan. If the Court orders the Case converted to chapter 7 after the entry of the Confirmation Order, this Plan provides that property of the Debtor's estate that have not been disbursed pursuant to the provisions herein will revest in the chapter 7 estate and that the automatic stay will be reimposed upon the revested property to the extent that relief from the stay was not previously authorized by the Court during the pendency of the Case. The

Confirmation Order may also be revoked under certain limited circumstances. The Court may revoke the Confirmation Order if and only if such order was procured by fraud and if a party in interest brings a motion to revoke such Confirmation Order within 180 days after the entry of the Confirmation Order.

### 11.21.  **Final Decree**

Once there has been Substantial Consummation of the Plan, the Liquidating Trustee shall file a motion with the Court to obtain a final decree to close the Case.

### 11.22.  **Inconsistency**

In the event of any inconsistency between the Plan and the Disclosure Statement, any Exhibit to the Plan or the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 11.23.  **No Interest or Attorneys' Fees**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Filing Date, an no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 11.24.  **Successors and Assigns**

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 11.25.  **Headings**

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 11.26.  **Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 11.27.  **Remedy of Defects**

After the Effective Date, the Liquidating Trustee, may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE XII

## CONCLUSION

The aforesaid provisions shall constitute the Plan of Liquidation of the Debtor and Clico Enterprises Ltd. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, Liquidating Trustee, and all Creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Code.