

**ORDERED in the Southern District of Florida on May 12, 2011.**

Erik P. Kimball, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
*West Palm Beach Division*

IN RE:

WELLINGTON PRESERVE CORPORATION,

Debtor.

CASE NO. 10-22049-BKC-EPK

Chapter 11

**ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF
LIQUIDATION OF DEBTOR AND CLICO ENTERPRISES, LTD. (D.E.#152);
AS CORRECTED BY D.E. #165; APPROVING SALE OF ASSETS TO
ZACARA FARMS, LLC; APPROVING EXCHANGE OF LOTS WITH TANEN;
APPROVAL OF SALE TO J-5 WELLINGTON PRESERVE, LLC;
AND OVERRULING OBJECTION OF IRS (D.E. #162)**

THIS CAUSE came before the Court in West Palm Beach, Florida on May 3, 2011 at 1:30 p.m. (the "Confirmation Hearing") to consider the Second Amended Joint Plan of Liquidation of Debtor and Clico Enterprises, Ltd. (D.E.#152) as corrected by D.E. # 165 (the "Plan"). The Plan provides, *inter alia*, for the

liquidation of all of the Debtor's real property and development rights through two separate sales of property and one exchange of lots.  The Confirmation Hearing was scheduled pursuant to this Court's Amended Order (A) Setting Confirmation Hearing, (B) Setting Deadline for Filing Objections to Confirmation, (C) Setting Hearing on Fee Applications, and (D) Describing Objections of Plan Proponents (D.E. #155) (the "Scheduling Order") which followed the DIP's Motion for:  (a) expedited hearing of confirmation of Joint Chapter 11 Liquidating Plan; (b) waiver of requirement of Disclosure Statement; and (c) waiver of balloting in connection with Joint Chapter 11 Liquidating Plan (D.E. #142, which had been filed on April 8, 2011).

The United States of America (Internal Revenue Service), filed an objection to confirmation (D.E. #162).  The gravamen of the IRS's objection is that a portion of its claim #1(4) is classified separately under Class 5.  The portion of its claim in question relates to penalties, and interests accrued upon those penalties. The proponents had classified these items in a class subordinate to general unsecured creditors.  IRS believes that they should be general unsecured claims, as well; not subordinated.

The Plan provides, however, for treatment of the entire IRS claim as disputed; out of the first real estate closing contemplated by the Plan, the Plan

would reserve the entire amount of the IRS claim, plus a 10% cushion, pending the outcome of the Debtor's contemplated objection to the claim of the IRS.

Given that the Plan reserves in full for the IRS claim, it is clear that the IRS objection is not really an objection to confirmation, and may be dealt with via the Court's forthcoming hearing on the Debtor's objection to the claim of the IRS. In addition, the IRS did not appear at the confirmation hearing. Accordingly, the IRS' objection to confirmation (D.E. #162) will be overruled.

Debtor requests confirmation of the Plan pursuant to Sections 1129(a) and (b) of the Bankruptcy Code. Unless otherwise stated, or where the context requires a different interpretation, capitalized terms used in this Order will correspond to the defined terms in the Plan.

The Scheduling Order set May 2, 2011 as the deadline for filing objections to the confirmation of the Plan ("Confirmation"). No objections to Confirmation of the Plan were filed with the Court on or before the deadline other than the objection filed by the IRS. At the Confirmation Hearing, the Court received documentary evidence and proffers presented by the Debtor in support of the Confirmation of the Plan. The Court has considered, in particular, the "Purchase and Sale Agreement" between Zacara Farms, LLC and Wellington Preserve Corporation (Exhibit 3 to the Plan, D.E.#150); the "Real Property Exchange Agreement" (Exhibit 4 to the Plan, D.E.#150); and the "Purchase and Sale Agreement" between J-5 Wellington

Preserve, LLC and Wellington Preserve Corporation (Exhibit 5 to the Plan, D.E.#150) (collectively, the "PSAs"), the Order of the Bahamian Supreme Court approving the PSAs, the arguments of counsel at the Confirmation Hearing, and all other germane matters of record before the Court in this bankruptcy case. Based upon the foregoing and pursuant to Federal Rules of Bankruptcy Procedure 2002, 3017, 3018, 3019, 3020, 6004, 7052 and 9014 and all applicable provisions of the Bankruptcy Code, the Court hereby finds and concludes as follows:

A. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

B. This Court has waived the filing and service of a Disclosure Statement.

C. The Plan and the Scheduling Order were served upon all creditors and parties in interest. All creditors and holders of equity interests received due and sufficient notice of the Plan. Since all creditors from administrative priority through general unsecured creditors who would be eligible to vote (the proponent of the Plan, Clico Enterprises, Ltd. is not eligible to vote) are deemed to have approved the Plan, as they are unimpaired, voting was not necessary.

D. Under the Plan, Classes 1, 2 and 3 are unimpaired and are deemed to have accepted the Plan. Class 4 is the impaired unsecured claim of Clico Enterprises, Ltd., which is a Proponent to the Plan and therefore ineligible to vote.

It is also the parent company of the Debtor and thus an insider. Class 5, consisting of the portion of the United States of America (Internal Revenue Service) claim for penalties, and interest on penalties, is deemed to accept the Plan, despite the dispute between the Debtor and the IRS, since the Plan reserves payment in full of the IRS claim, pending the outcome of their dispute. Alternatively, Class 5 is a disputed claim, thus not an allowed claim, and is not entitled to vote. The Class 6 equity holder receives nothing.

  E. The Plan complies with all applicable provisions of Section 1129(a) of the Bankruptcy Code. The Plan also complies with Section 1129(b) of the Bankruptcy Code. More specifically:

  i. the Plan satisfies Sections 1129(a)(1), (2) and (3) of the Bankruptcy Code in that the Plan and the Proponents have complied with the applicable provisions of the Bankruptcy Code and the Plan has been proposed in good faith and not by any means forbidden by law; and

  ii. the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code in that the Court retains jurisdiction to determine the reasonableness of any compensation to be paid by Debtor for services or costs and expenses in connection with the Bankruptcy Case; and

CASE NO. 10-22049-BKC-EPK

iii. the Plan satisfies Section 1129(a)(5) of the Bankruptcy Code in that the Proponents have disclosed that Craig A. "Tony" Gomez will serve as Disbursing Agent pursuant to the Plan; and

iv. Section 1129(a)(6) of the Bankruptcy Code is not applicable as there are no governmental regulatory commissions with jurisdiction over the rates of Debtor; and

v. the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code in that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class (i) has accepted the Plan or (ii) will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code; and

vi. the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with respect to Classes 1, 2, 3 and 5, as they are deemed to have accepted the Plan. Class 4, the allowed unsecured claim of Clico Enterprises, Inc. is impaired, but it is both an insider and Proponent of the Plan and has thus accepted it. Class 6, the Equity Holder, is not receiving or retaining any property under the Plan and therefore is deemed to have rejected it pursuant to Section 1126(g) of the Bankruptcy Code; and

  vii. the Plan satisfies Section 1129(a)(9) of the Bankruptcy Code in that the Plan provides that with respect to each claim of a kind specified in Sections 507(a)(1)-507(a)(8) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such claim will receive cash equal to the amount of such claim, except to the extent otherwise agreed by the holder of such claim; and

  viii. the Plan satisfies Section 1129(a)(10) of the Bankruptcy Code in that Classes 1, 2, 3 and 5 are deemed to have accepted the Plan, without including the acceptance of the Plan by any insider (as defined in 11 U.S.C. § 101(31)); and

  ix. the Plan contemplates liquidation of Debtor and Section 1129(a)(11) of the Bankruptcy Code is, therefore, not applicable; and

  x. the Plan satisfies Section 1129(a)(12) of the Bankruptcy Code as the Plan provides for payment of all fees payable under 28 U.S.C. § 1930 on the Effective Date and thereafter until a Final Decree or conversion; and

  xi. Section 1129(a)(13) of the Bankruptcy Code is not applicable as Debtor is not obligated to pay any retiree benefits.

  xii. Section 1129(a)(14) of the Bankruptcy Code is not applicable as Debtor is not required to pay a domestic support obligation; and

  xiii. Section 1129(a)(15) of the Bankruptcy Code is not applicable as Debtor is not an individual; and

xiv. Section 1129(a)(16) of the Bankruptcy Code is not applicable as Debtor is a moneyed corporation; and

xv. Debtor has requested that the Plan be confirmed pursuant to Section 1129(b)(1) of the Bankruptcy Code. The Plan does not discriminate unfairly, and is fair and equitable with respect to each Class of claims and interests, including Class 5, of the Internal Revenue Service. No Class junior to Class 5 will receive or retain anything under the Plan on account of such junior claim or interest.

F. The Plan is based upon three separate real estate transactions whereby the Debtor is selling all of its real estate holdings and development rights (the "Acquired Assets") pursuant to the three PSAs, for the total gross sales price (before direct closing costs) of US $50,000,000. The Purchasers identified in the relevant agreements are Zacara Farms, LLC, which has contracted to purchase 102.74 acres; members of the Tanen family, who have agreed to exchange the Debtor's parcels 23B and 24B for lots 24C and 25C currently owned by the Tanen's and J-5 Wellington Preserve, LLC, which has contracted to purchase 420.841 acres, together with development rights. Each of Zacara Farms, LLC, the Tanens; and J-5 Wellington Preserve, LLC is a Purchaser in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and they are entitled to the

protections of Section 363(m) of the Bankruptcy Code with respect to all of the Acquired Assets, as specifically referenced in Exhibits 4, 5 and 6 to the Plan.

G. Each of the PSAs and the Plan were negotiated and entered into in good faith, based upon arms' length negotiations and without collusion. None of the Purchasers, nor the Debtor, have engaged in any conduct which would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) of the Bankruptcy Code to any of the PSAs or the Plan.

H. Debtor has full corporate power and authority to execute each of the Contracts and the Plan and all documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all corporate authorities necessary to consummate the transactions contemplated by the Plan and the PSAs, including but not limited to the contractual contingency of approval by the Bahamian Supreme Court in the *Matter of the Winding Up of Clico Enterprises, Ltd.*, Case No. 2009/Com/com/00100. The consummation by Debtor of the sale of the Acquired Assets to the purchasers in accordance with the terms of the Plan and the PSAs will not constitute a violation of any law, regulation or ordinance under which the Debtor of the Acquired Assets are bound. No consents or approvals, other than those expressly provided for in the PSAs and the Plan are required by Debtor to consummate transactions contemplated by the Plan.

I.	None of the Purchasers is assuming any debts, liabilities or obligations of the Debtor.  Any exemption to the non-assumption by any of the Purchasers is specifically set out in that particular Purchaser's PSA.  None of the Purchasers shall in any way be liable or responsible for any Encumbrance arising on or before the Effective Date, unless such liability is expressly set forth in its respective PSA and in the Plan.  The Acquired Assets are being transferred free and clear of Encumbrances.

J.	Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under a bankruptcy plan, or the making, delivery, or recording of an instrument of transfer in connection with the sale of the transactions contemplated under an asset purchase agreement shall not be taxed under any law imposing a stamp or similar tax, including without limitation, any documentary stamp taxes or intangible taxes, whether on any deed, leasehold, assignment, promissory note, security agreement, or mortgage.  Pursuant to 11 U.S.C. § 1146(a) and Rule 12B-4.014(15), Florida Administrative Code, the Property is being conveyed to each of the Purchasers pursuant to the Plan, and as such, the conveyance shall be exempt from any documentary stamp tax and any other tax assessed under Florida law upon the conveyance of the Property.

K.	Other than each of the Purchasers, or their designee, no persons or entities have any rights to purchase, occupy or possess all or any portion of the

10

CASE NO. 10-22049-BKC-EPK

Acquired Assets (whether as a result of a purchase agreement, option, lease, license or otherwise). Each of the Purchasers may assign their respective rights and obligations under their PSA and the Plan without the Debtor's prior written consent.

Accordingly, the Court having made the foregoing findings of fact and conclusions of law and based upon the presentation of evidence and the record, it is

**ORDERED** as follows:

1. The requirement of a Disclosure Statement is **WAIVED** as the Plan itself and the Exhibits thereto provided sufficient information for the creditors to evaluate the Plan.

2. The objection of the IRS to confirmation of the Plan (D.E. #162) is **OVERRULED**. However, the Debtor is instructed to file a separate written objection to the claim of the IRS, consistent with the Plan, within seven (7) days of the date of this Order.

3. The Plan is **CONFIRMED** in all respects pursuant to Section 1129 of the Bankruptcy Code, and all of its terms and provisions are approved as modified on the record. The sale of the Acquired Assets to the respective Purchasers, each in accordance with their respective PSA, is approved pursuant to Sections 363(b), (f), (m) and 1129 of the Bankruptcy Code.

4.     Pursuant to Section 363(f) of the Bankruptcy Code, the sale of the Acquired Assets pursuant to the PSAs, the Plan and this Order shall be free and clear of any and all encumbrances.

5.     Effective as of the Effective Date, the sale of the Acquired Assets by Debtor to each of the respective Purchasers shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement or approval or consent by any person or entity and shall vest each of the respective Purchasers with all right, title and interest in and to the Acquired Assets, free and clear of all Encumbrances.  None of the Purchasers shall be liable or obligated for any liabilities or obligations of the Debtor or the Acquired Assets arising before the Effective Date, other than as expressly set forth in that particular Purchaser's PSA.

6.     The Consideration being paid by each of the respective Purchasers (i) is fair and reasonable, (ii) may not be avoided under Section 363(n) of the Bankruptcy Code or other applicable law and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, Uniform Fraudulent Transfer Act, and any similar laws of any state whose law may be applicable to the Acquired Assets.

7.     None of the Purchasers is a successor to Debtor or its estate by reason of any theory of law or equity and none of the respective Purchasers shall assume or in any way be responsible for any liability or obligation of the Debtor or its estate

(whether direct or indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed), except as otherwise expressly provided in that Purchaser's respective PSA or in the Plan.

8. The Debtor is authorized, empowered, and directed to enter into and to perform its obligations under the Plan and under each of the respective three PSAs attached to the Plan as Exhibits 3, 4 and 5, and to execute and perform such agreements or documents or take such other actions as are necessary or desirable to effectuate the terms of the Plan and of the respective PSAs.

9. This Order shall be binding upon and govern the acts of all persons or entities, including, without limitation, all filing agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments.

10. Each of the respective Purchasers is authorized to file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded shall constitute conclusive evidence of the release of all Encumbrances against or in the Acquired Assets.

11. The Debtor is authorized and empowered to take all actions and to execute and deliver any and all documents and instruments that the Debtor deems necessary or appropriate to implement and effectuate the terms of the respective

CASE NO. 10-22049-BKC-EPK

PSAs, the Plan and this Order, including without limitation, deeds, bills of sale, assignments, releases, affidavits and similar documents required of Debtor pursuant to the respective PSAs or the Plan. Debtor and each other person having duties or responsibilities under the respective PSAs or the Plan, any agreements related thereto or this Order, and their respective directors, officers, managing partners or members, general partners, agents, representatives, and attorneys are authorized and empowered, subject to the terms and conditions contained in the respective PSAs and the Plan, to carry out all of the provisions thereof and any related agreements; to issue, execute, deliver, file and record, as appropriate, the documents necessary to effect the closing of the respective sale and exchange transactions and Plan, and any related agreements; and to take any and all actions contemplated by the respective PSAs or Plan and any related agreements or this Order.

12. All utilities or entities that provide or have provided water, electricity, gas, oil, telephone and similar services to Debtor are enjoined and prohibited from interrupting, cancelling or terminating such services to each of the Purchasers, from and after the Effective Date as a result, directly or indirectly, of claims against the Debtor, including for unpaid charges.

13. All interested parties, including all governmental entities, are enjoined from modifying or terminating any permits or licenses as a result of the transfer of

the Acquired Assets or the failure by the Debtor to pay any fines, penalties, liens or Encumbrances arising or owing before the Effective Date in connection with the Acquired Assets.

14. All persons and entities are enjoined from in any way pursuing the Purchasers or the Acquired Assets by suit or otherwise to recover on any Encumbrances which they had, have or may have against Debtor or the Acquired Assets or with respect to Claims they had, have or may have had against the Debtor or the Acquired Assets on or before the Effective Date.

15. Any portion of the each of the respective PSAs or the Plan and any related agreements may be waived, modified, amended or supplemented by written agreement of Debtor and the respective Purchaser without further action of the Court; provided, however, that any such waiver, modification, amendment or supplement is not materially adverse to the Debtor and substantially conforms to an effectuates the respective PSAs and the Plan.

16. The failure specifically to include any particular provision of the PSAs or the Plan shall not diminish or impair the effectiveness of such provision; it being the intent of the Court, the Debtor, and the Purchasers that the PSAs, the Plan and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order before the Effective Date.

17. The Disbursing Agent designated in the Plan shall pay to the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) on the Effective Date and simultaneously provide to the U. S. Trustee the appropriate report indicating the cash disbursements for the relevant period. The Disbursing Agent shall also pay all post-confirmation U.S. Trustee's fees pursuant to 28 U.S.C. § 1930 to the extent required by law, and shall submit quarterly post confirmation disbursement reports as required until either conversion or entry of a Final Decree.

18. Pursuant to 11 U.S.C. § 1146(a), the making, delivery, amendment or recording of an instrument of transfer in connection with (a) the Purchase and Sale Agreement with Zacara Farms, LLC; (b) the exchange of two of Debtor's lots for two lots from the Tanen family; and (c) the sale to J-5 Wellington Preserve, LLC or its assigns shall not be taxed under any law imposing a stamp or similar tax, including but not limited to any intangible taxes or documentary stamp taxes, whether on any deed, leasehold, assignment, promissory note, security agreement or mortgage.

19. Each of the Purchasers may assign its respective rights under the Plan and its respective PSA. In the event that any Purchaser assigns its rights, then this Order, the Plan, and the respective PSA shall be binding upon, and shall inure to the benefit of such Assignee and its respective successors and assigns, and all references in this Order (as applicable) to such Assignor-Purchaser shall inure equally to its Assignee.

CASE NO. 10-22049-BKC-EPK

20. The Court shall retain jurisdiction as provided in the Plan, including without limitation, jurisdiction to award professional fees and reimbursement of costs for any periods prior to confirmation of the Plan to the extent not awarded at the Confirmation Hearing. Any provision in this order retaining jurisdiction before this Court (a) is subject to 28 U.S.C. § 1334, and (b) does not limit the ability of the Court to abstain from hearing a particular matter.

21. The provisions of this Order are non-severable and mutually dependent.

22. This Order shall be effective immediately upon its entry and, in accordance with Federal Rules of Bankruptcy Procedure 3020(d), 6004(h) and 6006(d), this Order shall not be stayed.

#     #     #

Conformed Copies to:

Ronald G. Neiwirth, Esq.
Office of the U.S. Trustee

> Mr. Neiwirth to serve a copy of conformed copy
> Of this Order to all parties in interest and file
> a Certificate of Service with the Court.